# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3350

_____

| | | |
|---|---|---|
| David Bass, Individually and as husband of Kimberly Bass, | * * * | |
| Plaintiff/Appellee, | * * | |
| | * | Appeal from the United States |
| Kimberly Bass, Individually and as wife of David Bass, | * * | District Court for the Eastern District of Arkansas. |
| | * | |
| Plaintiff, | * * | |
| v. | * * | |
| Flying J, Inc., doing business as Flying J Travel Plaza, | * * * | |
| Defendant/Appellant. | * | |

_____

Submitted: May 17, 2007
Filed: September 14, 2007

_____

Before WOLLMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

David and Kimberly Bass (hereinafter referred to by their first names or collectively as "the Basses") brought this negligence action against Flying J, Inc. (Flying J) to recover damages resulting from the injuries David sustained while

fueling his tractor trailer at the Flying J Travel Plaza in West Memphis, Arkansas. The jury returned a verdict in favor of David on his claim for damages, and Flying J now appeals, arguing that the district court[1] erred in striking a portion of one of its proposed jury instructions and in admitting certain evidence at trial. We affirm.

## I.

On December 22, 2002, David stopped at the Flying J Travel Plaza in West Memphis, Arkansas, to fill his tractor trailer with diesel fuel. The tractor had one fuel tank on the passenger's side of the vehicle and one on the driver's side. David inserted a fuel pump nozzle in each of these tanks and proceeded to check the tires on the truck. When the fuel pump nozzle filling the driver's side tank shut off automatically, David began to top off the tank manually. While doing this, he noticed that diesel fuel was spilling out of the passenger side fuel tank and onto the ground. He quickly walked around to the passenger side of the vehicle to shut off the nozzle manually and, in the process, slipped on the spilled diesel fuel and was injured.

The Basses' complaint alleged that Flying J had failed to fix a faulty fuel dispensing device, warn of hazardous and unsafe conditions, or use ordinary care to maintain its premises in a reasonably safe condition. At trial, the district court admitted into evidence a letter written by Cheryl Jones, a senior liability adjuster for GAB Robbins, which had been hired by Flying J to investigate the incident. The letter (hereinafter referred to as the GAB letter) stated, *inter alia*, that Flying J had acknowledged that the automatic "on" latch on the nozzle was broken, and asserted that Flying J was not responsible for David's injuries in part because David had reportedly tied the nozzle in the "on" position with a piece of cloth. The district court

---

[1]The Honorable George Howard, Jr., late a United States District Judge for the Eastern District of Arkansas.

also permitted Tommy Gault, a former employee of Flying J, to testify regarding the maintenance and safety of the truck stop.[2]

At the close of evidence, the district court struck a portion of one of Flying J's proposed jury instructions. The instruction, as proposed, stated:

> In this case, David Bass was an invitee upon the premises of the Flying J, Inc. D/B/A Flying J Travel Plaza. Flying J, Inc. D/B/A Flying J Travel Plaza owed David Bass a duty to use ordinary care to maintain the premises in a reasonably safe condition. No such duty exists, however, if the condition of the premises that creates the danger was known by or obvious [to] David Bass, unless Flying J should reasonably anticipate that David Bass would be exposed to the danger despite his knowledge of it, or its obvious nature.

App. at 101. While the parties agreed on the first two sentences of the instruction, the Basses asserted that a faulty fuel pump nozzle was the dangerous condition and that the last sentence of the instruction should therefore be excluded because the evidence did not support a conclusion that this dangerous condition was known or obvious to David. Flying J argued that the spilled fuel was the dangerous condition and that the jury could reasonably conclude that the dangerous condition was known and obvious to David. The district court ultimately struck the last sentence of the instruction, concluding that the evidence did not clearly show that David knew of the danger or that it was obvious to him.

---

[2]During his testimony, Gault stated, *inter alia*, that Flying J did not properly train the maintenance people and that he was concerned about the safety of others while working at the Flying J Travel Plaza because "[i]t just was unsafe to work around anything. Whatever you touched it wasn't working properly." Tr. at 136-37.

## II.

Flying J contends that the district court erred in striking the last sentence of Flying J's proposed jury instruction.  Flying J also contends that the district court erred in admitting the letter from GAB and in allowing Gault to testify about the maintenance and safety of the Flying J Travel Plaza.

### A. Jury Instruction

We review a district court's rulings concerning jury instructions for abuse of discretion.  Wilson v. City of Des Moines, 442 F.3d 637, 644 (8th Cir. 2006).  In doing so, "we must determine simply whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury."  Id.  Reversal is warranted only if instructional errors have affected a party's substantial rights.  Gross Int'l. Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 434 F.3d 1081, 1093 (8th Cir. 2006) ("[E]rroneous jury instructions necessitate a new trial only when we conclude the errors misled the jury or had a probable effect on the jury's verdict." (internal quotations omitted)).

Under Arkansas law, which we must apply in this diversity action, Fogelbach v. Wal-Mart Stores, Inc., 270 F.3d 696, 698 (8th Cir. 2001), a possessor of land has a duty to exercise reasonable care to protect invitees against dangerous conditions on the property if the possessor knows of the condition or would discover the condition with the exercise of reasonable care.  Van DeVeer v. RTJ, Inc., 101 S.W.3d 881, 883-84 (Ark. Ct. App. 2003) (citing Restatement (Second) of Torts § 343 (1965)).  This duty does not exist, however, "where the dangerous condition is either known or obvious to the invitee."  Id. at 884 (relying on Restatement (Second) of Torts § 343A(1) (1965)).  These rules are the basis for Instruction 1104 of Arkansas's Model Civil Jury Instructions, the instruction proffered by Flying J.  See id.

Flying J asserts that the third sentence should have been included in the proposed jury instruction because the spilled fuel was the dangerous condition and the jury could reasonably have found that David was aware of that condition. Assuming, *arguendo*, that the fuel spill was the dangerous condition and that the district court erred by excluding the contested portion of the instruction, we conclude that the error does not warrant reversal. The omitted portion of the jury instruction set forth not only the "known and obvious danger" rule, but also the exception that "Flying J should [have] reasonably anticipate[d] that David Bass would be exposed to the danger despite his knowledge of it, or its obvious nature." In light of the evidence presented, Flying J should have reasonably anticipated that David would expose himself to the danger by attempting to shut off the nozzle manually when the fuel tank began to overflow.[3] As a result, even if the contested portion of the instruction had been given, it would not have had a probable effect on the jury's verdict because of the exception to the known and obvious danger rule.

Further supporting our conclusion that the error was harmless is that the issues were fairly and adequately submitted to the jury. The jury was given instructions regarding both proximate cause and comparative fault, which would have allowed the jury to reduce or eliminate Flying J's liability. The known and obvious danger instruction would not have led the jury to discuss issues different from those covered

---

[3]Flying J asserted that, instead of attempting to shut off the fuel nozzle manually, David should have 1) used the telephone located at the island to call for assistance, 2) used the CB in his tractor trailer to call for assistance, or 3) activated the master shut-off switch located near the fuel pumps. Other potential actions that David might have taken are, however, irrelevant as to whether Flying J should have anticipated a trucker doing what David actually did. Regardless of the reasonableness, or not, of the alternatives, it is clearly probable that a trucker would take the most direct course of action available to stanch the flow of fuel to the overflowing tank—that of proceeding directly to the misfunctioning nozzle.

by the instructions actually given, and the jury did not find Flying J's arguments on those issues persuasive. Accordingly, we conclude that the district court's exclusion of the contested portion of the jury instructions, even if erroneous, was harmless.

## B. Evidentiary Issues

"We review evidentiary rulings for an abuse of discretion, according such decisions substantial deference." Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006). Flying J contends that the district court erred when it admitted the GAB letter as evidence. As recounted above, the GAB letter stated that Flying J was not liable for David's damages in part because he had tied the fuel nozzle in the "on" position with a piece of cloth. Because Flying J was later unable to locate the person who reportedly provided this information and consequently abandoned this line of defense at trial, Flying J asserts that the letter was irrelevant under Federal Rule of Evidence 401. Flying J also argues that the letter was unfairly prejudicial because its only purpose was to "paint Flying J in a bad light by implying that its investigator fabricated a story about Mr. Bass tying off the fuel nozzle," and therefore should have been excluded pursuant to Federal Rule of Evidence 403. Appellant's Br. at 17. As the Basses point out, however, the reference to David's tying the fuel nozzle in the "on" position was not the only information contained in the letter. It also stated that Flying J personnel had acknowledged that the fuel nozzle was defective—an admission that was certainly relevant to the Basses' case. Accordingly, the letter was not irrelevant. Furthermore, any unfair prejudice suffered by Flying J did not substantially outweigh the letter's probative value to the Basses.

Flying J contends that the district court erred when it permitted Gault to testify about the maintenance and safety conditions at the Flying J Travel Plaza. In light of Flying J's acknowledgment that the nozzle was defective, we conclude that, however

marginally relevant Gault's testimony may have been, the district court did not abuse its discretion in admitting it.

The judgment is affirmed.

_____