# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 06-4115/4188

_____

The Shaw Group, Inc.                         *
                                             *
    Appellant/Cross-Appellee,            *
                                             *  Appeal from the United States
v.                                           *  District Court for the
                                             *  Western District of Arkansas.
Beverly Gay Marcum, and                      *
Belinda Gail Henly,                          *
Co-Administrators for the Estate of          *
Van Ryan Marcum, Deceased,                   *
                                             *
    Appellees/Cross-Appellants.          *

_____

Submitted: October 15, 2007
Filed: February 26, 2008

_____

Before LOKEN, Chief Judge, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

This wrongful death lawsuit arises out of the fatal electrocution of United States Army Private Van Ryan Marcum. His Estate sued The Shaw Group, Inc., a private contractor in charge of maintenance and repairs at Fort Benning, Georgia. The Estate alleges that Shaw negligently performed its duties under the contract with the United States Army. A jury returned a verdict against Shaw. Shaw appeals, seeking judgment as a matter of law, or alternatively a new trial. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

On June 19, 2004, Private Marcum leaned his head and back against an abandoned, metal latrine, following an exercise on firing range Malone 14 at Fort Benning. The outer walls of the latrine carried a live current of electricity. Private Marcum was fatally electrocuted.

An investigation showed that the building was insufficiently grounded and improperly bonded, and had a faulty circuit breaker and a short in the wiring to a fan. The short energized the shell of the metal building. When Private Marcum sat down and leaned against the building, he completed the circuit and became the ground.

Before Private Marcum's death, Shaw was to demolish several abandoned, metal latrines, including the Malone 14 latrine, pursuant to an approved individual job order (IJO) from the Army. The approved IJO had an original "suspense date," a completion date, of March 14, 2004. Suspense dates are used to evaluate the timeliness of Shaw's work. On June 17, two days before Private Marcum's death, representatives from the Army and Shaw attended a budget meeting. Among other things, they discussed this IJO. The Army and Shaw agreed to postpone, or "slow play," the demolition of metal latrines, including the Malone 14 latrine.

Before trial, Shaw moved for summary judgment, asserting it had no duty under the contract to demolish the abandoned, metal latrines. The district court[1] ruled that Shaw had a duty to inspect, repair and maintain the Malone 14 latrine. The court also ruled that justiciable questions of fact existed regarding the demolition of the Malone 14 latrine and that foreseeability was a question for the jury because reasonable persons could differ about it. During trial, the court denied Shaw's motion for

---

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

judgment as a matter of law; and after trial, the court denied Shaw's renewed motion for judgment as a matter of law and motion for new trial.

The jury returned a verdict against Shaw. It awarded $1.5 million for mental anguish to Private Marcum's father, $1.5 million for mental anguish to his mother, $3 million in damages for "loss of life," and $500,000 for conscious pain and suffering, for a total verdict of $6.5 million. On special interrogatories, the jury apportioned 75 percent of the fault to the Army and 25 percent to Shaw.

## II.

This court reviews de novo the district court's decision to deny judgment as a matter of law. *Schooley v. Orkin Extermination, Co., Inc.*, 502 F.3d 759, 764 (8th Cir. 2007). "Judgment as a matter of law is only appropriate where the evidence adduced at trial is entirely insufficient to support the verdict." *Id.* In making this determination, the court considers all the evidence in the record without weighing credibility, while resolving conflicts and making all reasonable inferences in favor of the non-moving party. *Id.* This court will not set aside a jury verdict "unless there is a complete absence of probative facts to support the verdict and only speculation supports the verdict." *Ollis v. HearthStone Homes, Inc.*, 495 F.3d 570, 575 (8th Cir. 2007). This court may "affirm the denial of a motion for judgment as a matter of law on any basis the record supports." *HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 934 (8th Cir. 2007). In this diversity case, the parties and the district court have applied the substantive law of Arkansas. *See Transcontinental Ins. Co. v. Rainwater Constr. Co., LLC* 509 F.3d 454, 456 (8th Cir. 2007).

Shaw claims the district court erred in denying its motion for judgment as a matter of law. Shaw premises its arguments on the concepts that its duties to Private Marcum are defined exclusively by the contract and that the extent of these duties is a matter of law to be determined by the court.

Under Arkansas law, the issue of whether a duty exists is always a question of law. *Lacy v. Flake & Kelley Mgmt., Inc.*, 235 S.W.3d 894, 896 (Ark. 2006). "If no duty of care is owed, summary judgment is appropriate." *Id.* To determine what duty, if any, Shaw owed Private Marcum, this court must first determine what duty Shaw owed the Army under the contract. *See Perry v. Baptist Health*, 189 S.W.3d 54, 58 (Ark. 2004) ("In Arkansas, a party may recover for damages from breach of contract when that party is a third-party beneficiary to the contract."); *Wilson v. Rebsamen Ins., Inc.*, 957 S.W.2d 678, 682 (Ark. 1997).

It is "a settled rule in the construction of contracts that the interpretation must be upon the entire instrument, and not merely on disjointed or particular parts of it." *Byme, Inc. v. Ivy*, 241 S.W.3d 229, 236 (Ark. 2006), *quoting First Nat'l Bank of Crossett v. Griffin*, 832 S.W.2d 816, 819 (Ark. 1992). "In seeking to harmonize different clauses of a contract, we should not give effect to one to the exclusion of another even though they seem conflicting or contradictory, nor adopt an interpretation which neutralizes a provision if the various clauses can be reconciled. The object is to ascertain the intention of the parties, not from particular words or phrases, but from the entire context of the agreement." *Byme, Inc.*, 241 S.W.3d at 236, *quoting Sturgis v. Skokos*, 977 S.W.2d 217, 223 (Ark. 1998).

As the contractor, Shaw had several duties that are relevant here. Under section 5.1.4.2 *Critical Systems*, Shaw had a duty to keep the electrical systems and the structural integrity and safety of buildings "operational 24 hours a day, every day." Under section 5.1.2.5.4.3 *IJO Work Approval*, after the Army approved the IJO to demolish abandoned, metal latrines (including Malone 14 latrine), Shaw had a duty to demolish them in accordance with work scheduling practices. Shaw even had a duty to maintain and repair the Malone 14 latrine, pending demolition:

> 5.1.1.2.10 Facilities, Systems, and Equipment Identified for Future Replacement. The Contractor shall maintain and repair equipment as

outlined in this Contract, unless otherwise directed by the KO regardless of whether specific facilities, systems, or equipment have been identified for future replacement by the Government.

Shaw had a duty to perform its work in a timely manner:

> 5.1.1.1.1 Customer Interface. As a part of the scheduling process, the Contractor shall coordinate all work with the facility where the work is to be done in a timely manner to preclude life-threatening situations. . . . .

> 5.11.1 INTRODUCTION
> The Contractor effort shall be sufficient to provide functionally usable range facilities fully capable of supporting the Fort Benning training and support mission. The Contractor shall be responsible for providing timely service and maintenance to minimize any disruption of the training mission.
> . . . .

> 5.11.2.2.6 Response Times. Due to the heavy use of ranges, ranges shall be repaired within the timeframes specified by the Government so as not to delay future use of the range.
> . . . .

Shaw asserts the contract unequivocally provides that no work can be performed in any functional area without the issuance of a work order. Work orders are separated into three categories:

> 5.1.2.1 Standing Operating Orders (SOOs)

> SOOs represent work that is performed on a recurring basis . . . . SOO work is described under SCHEDULED TASKS in Functional Areas 5.2 through 5.11, 5.15, and 5.17.
> . . . .

> 5.1.2.2. Service Orders (SOs)

SOs represent work that is generally corrective in nature (e.g., repairs and replacements) or those related services that are not generally considered to be maintenance activities. . . . Examples include minor electrical, . . . . SO work is described under UNSCHEDULED TASKS in Functional Areas 5.2 through 5.11, 5.15, and 5.17. . . . An SO may be initiated . . . by the Contractor upon identification of a need for corrective action.

. . . .

5.1.2.3 Individual Job Orders (IJOs)

IJOs represent project-oriented work such as repairs, modifications, replacements, or installations that exceed the thresholds defined above for a SO. . . . IJO work is described under UNSCHEDULED TASKS in Functional Areas 5.2 through 5.11, 5.15, and 5.17. An IJO may be initiated . . . by the Contractor upon identification of a need for a corrective action.

. . . .

Shaw may self-initiate SOs and IJOs "upon identification of a need for corrective action." This also can be done under section 5.1.2.5.1 *Sources of Work*. Additionally, Shaw may self-authorize SOOs and SOs under sections 5.1.2.5.4.1 *SOO Work Approval* and 5.1.2.5.4.2 *SO Work Approval*. Shaw may not commence work on an IJO without the approval of the Army Contracting Officer under section 5.1.2.5.4.3 *IJO Work Approval*. Because Shaw may initiate work orders and self-authorize SOOs and SOs, then the issue, as the district court correctly noted, is whether Shaw had notice of a need to provide corrective action at the Malone 14 latrine.

There were three work orders to repair electrical problems at latrines before Private Marcum's death: an IJO to repair a circuit breaker at the Wagner Range latrine, an IJO for electrical wiring at AO Green Range latrine, and a SO to repair a circuit breaker at the Ware Range latrine. Viewing the evidence most favorably to the nonmoving party, this provides sufficient notice of a need to provide corrective action, and consequently a duty to self-initiate a SO or an IJO. Therefore, the court

did not err in finding that Shaw owed several duties under the contract relating to the Malone 14 latrine as a matter of law.

Shaw contends that at the time of the accident, it was under no duty to the Army to remove the Malone 14 latrine because the Army indefinitely postponed the IJO to demolish latrines. However, the evidence *did* confirm that Shaw was under a duty to repair and maintain the Malone 14 latrine, to demolish the latrine, and to demolish the latrine in a timely manner. The original suspense date was March 14. Three months later, Shaw had not discussed or even assigned the IJO. Though Shaw was granted relief on the suspense date, it did not mean that the IJO did not have to be completed *at all*. Shaw was directed to obtain a new suspense date – not to postpone the IJO indefinitely. Therefore, Shaw was still under a duty to demolish the latrines. Because Shaw had a duty to maintain and repair the latrine at Malone 14 and also a duty to demolish the latrine timely, the jury could have reasoned that Shaw breached its duties by not completing them at all and/or in a timely manner. The evidence is sufficient to support this inference.

Shaw also argues that even if it had a contractual duty to demolish the Malone 14 latrine before June 19, failing to meet the deadline did not make it liable for Private Marcum's death because his death was not foreseeable. Shaw concludes it had no notice, and the Army made no determination, that the latrine posed a safety risk, and the three previous work orders that were completed by Shaw at metal latrines did not provide notice of a safety risk.

Under Arkansas law, "[n]egligence is defined to mean the failure to do something which a reasonably careful person would do, or doing something which a reasonable careful person would not do, under circumstances similar to those shown by the evidence . . . ." *Wallace v. Broyles*, 961 S.W.2d 712, 715 (Ark. 1998). As essential elements, it requires a showing that a duty was owed and that the duty was breached. *Lacy*, 235 S.W.3d at 896. Negligence also requires a showing that "a reasonably careful person would foresee such an appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner." *Wallace*, 961

S.W.2d at 715. It is not necessary that "the actor foresee the particular injury which occurred." ***Id.***

The evidence supports that an appreciable risk of harm was foreseeable. There were three work orders for electrical work at three different latrines before Private Marcum's death; all work was completed before his death. Though there was testimony that two of the latrines were not abandoned and that the circuit breakers did not need repair at two of them, assessing this testimony is the function of the jury. *See **HOK Sport, Inc.***, 495 F.3d at 934 ("[W]here conflicting inferences reasonably can be drawn from evidence, it is the function of the jury to determine what inference shall be drawn."). Further, making all reasonable inferences in favor of the non-moving party, the evidence supports the jury verdict that an appreciable risk of harm was foreseeable, including electrocution. See ***Wallace***, 961 S.W.2d at 715.

The court did not err in denying Shaw's motions for judgment as a matter of law.

### III.

This court reviews for abuse of discretion the district court's denial of a motion for new trial. ***Murphy v. Mo. Dept. of Corr.***, 506 F.3d 1111, 1116 (8th Cir. 2007). It should only be granted if "the verdict is against the weight of the evidence and . . . allowing it to stand would result in a miscarriage of justice." ***Id.***, *quoting **Jones v. TEK Indus., Inc.***, 319 F.3d 355, 358 (8th Cir. 2003).

Shaw insists the district court erred in allowing the jury to decide the extent of Shaw's duty under the contract. As previously discussed, Shaw had a duty to maintain and repair the latrine at Malone 14 and also a duty to timely demolish the latrine pursuant to an approved IJO. The only question that the court left for the jury was whether the Army indefinitely postponed the IJO to demolish the latrines. This was a proper question of fact for the jury.

Shaw argues the court erred in admitting evidence of other duties under the contract – that Shaw had a contractual duty (1) to perform a baseline inspection of Fort Benning; (2) to anticipate and identify hazards before the Army became aware of them; (3) to self-authorize a SO to inspect all metal latrines; (4) to ask the Army to authorize an IJO to inspect all metal latrines; and (5) to implement a deficiency identification program. Shaw also claims the court erred in allowing expert testimony to interpret the contract.

Evidentiary rulings are generally reviewed for abuse of discretion, *Spencer v. Young*, 495 F.3d 945, 949 (8th Cir. 2007), including the district court's decision to admit expert testimony. *Shuck v. CNH Am., LLC*, 498 F.3d 868, 873 (8th Cir. 2007). However, this court "will not set aside a jury verdict unless the district court clearly and prejudicially abused its discretion in determining whether or not to admit evidence." *Allied Sys., Ltd. v. Teamsters Transp., Local 604*, 304 F.3d 785, 791 (8th Cir. 2002).

The court did not clearly and prejudicially abuse its discretion in admitting evidence of other duties under the contract allegedly unrelated to the approved IJO. As previously discussed, the duties owed by Shaw under the contract did not derive *only* from the approved IJO. Shaw also had duties to self-initiate a SO or an IJO when given notice of a need for corrective action, to perform its work in a timely manner, to maintain and repair the Malone 14 latrine, and to keep the electrical systems operational 24 hours a day, every day. Therefore, admitting duties that are expressly defined by the contract is not a clear and prejudicial abuse of discretion.

Moreover, the court did not clearly and prejudicially abuse its discretion in admitting the testimony of Ira Whitlock, the expert witnesss. Whitlock properly testified as an electrical engineer, based on his experience working with military contracts similar to the Shaw and Army contract. *See* **Fed. R. Evid. 702** ("a witness qualified as an expert by knowledge, skill, experience, training or education, may testify . . . in the form of an opinion or otherwise"). The court properly excluded any expert testimony as to Shaw's duty under the contract, permitting Whitlock to testify

only as to the ordinary business practices of those engaged in private contracting with the military. *See Lacy*, 235 S.W.3d at 896 (duty is a question of law). Additionally, Shaw had ample opportunity to cross-examine Whitlock and present contrary evidence, and the court properly instructed the jury on expert testimony and the burden of proof. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Shaw also maintains the district court erred in refusing to submit its proffered jury instructions. This court reviews for abuse of discretion a refusal to submit proffered jury instructions. *Powell v. TPI Petroleum, Inc.*, 510 F.3d 818, 823 (8th Cir. 2007). "In doing so, 'we must determine simply whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury.'" *Bass v. Flying J, Inc.*, 500 F.3d 736, 739 (8th Cir. 2007), *quoting Wilson v. City of Des Moines*, 442 F.3d 637, 644 (8th Cir. 2006). Reversal is warranted only if a party's substantial rights are affected. *Bass*, 500 F.3d at 739.

Shaw asked for three jury instructions: (1) the Plaintiffs' burden to prove Shaw's negligent performance of the IJO; (2) the only contractual duty owed by Shaw with regard to the Malone 14 latrine is the contractual duty created by the IJO; and (3) the Army waived the right to enforce the demolition of the Malone 14 latrine because it lifted the original suspense date before June 19, 2004.

The court did not err in declining Shaw's jury instructions. The court properly instructed the jury on the burden of proof, including the definition of negligence, foreseeability, and proximate cause. It provided an instruction stating that the duty owed by Shaw was defined exclusively by the contract, which is a correct statement of Arkansas law. *See Sparks Reg'l Med. Ctr. v. Blatt*, 935 S.W.2d 304, 306 (Ark. Ct. App. 1996). The court also gave Shaw's jury instruction as to its affirmative defense – that the Army prevented or hindered performance of the contract and that

the burden was on Shaw to prove this contention. Viewing the instructions as a whole and in light of the evidence and applicable law, the instructions fairly and adequately submitted the issues in the case to the jury.

The court did not err in denying the motion for new trial. As conceded by the cross-appellant Estate, this court therefore need not address the cross-appeal.

## IV.

The judgment of the district court is affirmed.

_____