NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BRENT E. SMITH, AES RAPTOR, LLC,**
*Plaintiffs-Appellees*

**v.**

**GARLOCK EQUIPMENT COMPANY,**
*Defendant-Appellant*

---

2015-1758

---

Appeal from the United States District Court for the Western District of Missouri in No. 5:13-cv-00104-GAF, Judge Gary A. Fenner.

---

Decided: August 23, 2016

---

DAVID LOUIS MARCUS, Bartle & Marcus LLC, Kansas City, MO, argued for plaintiffs-appellees. Also represented by DONNA DENISE MASHBURN CHAPMAN, Mashburn Law Office, LLC, Lee's Summit, MO.

PAUL SMITH, Larkin Hoffman Daly & Lindgren, Ltd., Minneapolis, MN, argued for defendant-appellant. Also represented by GLENNA GILBERT, LAURIS A. HEYERDAHL.

---

Before O'MALLEY, LINN, and STOLL, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

This appeal arises from a jury verdict finding Garlock Equipment Company ("Garlock") liable for infringement of the asserted claims of U.S. Patent No. 8,240,431 (the "'431 Patent"), and awarding damages for lost profits and reasonable royalties. Garlock moved for judgment as a matter of law on both findings. The district court denied Garlock's motions and proceeded to issue an injunction prohibiting infringing activities involving the accused products. Garlock now appeals the district court's denial of its motions for judgment as a matter of law and the district court's injunction order. For the reasons set forth below, we *reverse* the district court's denial of judgment as a matter of law regarding infringement. Because the accused devices do not infringe the asserted claims of the '431 patent, we vacate the jury award of damages and the district court's injunction order.

## BACKGROUND

A brief review of the patented technology, the accused products, and the procedural background of the district court litigation is helpful to understanding the present appeal.

### The Patent in Suit

The '431 patent claims a fall-arresting safety device typically used to prevent a worker from falling off a roof. '431 patent, at Abstract. Generally, the device works such that a worker's fall causes an "arrestor arm" to swing down and connect with the ground, gripping the ground and halting the worker's fall. *Id.* The figures below show the device in the raised/resting (left) and engaged (right) position, where the arm swings down to connect with the ground. The worker is usually connected via a tether to the ring **32** at the left of each image.

 

'431 patent, at Figs. 3 and 4.

The '431 patent contains independent claims 1 and 5, which are both at issue in this suit. Claim 1 reads as follows:

1. An apparatus adapted for use on an elevated surface, and for arresting the fall of a person from the surface, the apparatus comprising:

an apparatus support defining lateral and longitudinal extents,

an arrestor assembly connected to said apparatus support, and further comprising:

an arrestor arm fully contained within the extents, pivotally mounted to the support at a first end, and presenting a free second end, wherein the arm is shiftable between a raised non-engaged position and a lowered engaged position, and a gravitational moment-force acts upon the arm at the second end,

a gripping plate fully contained within the extents, and secured to the second end, wherein the plate is spaced from the surface in the non-engaged position, and bears upon, so as to grip, the surface in the engaged position

a bias member drivenly coupled to the arm and generating a second force greater than the gravitational moment-force so as to normally

retain the second end in the non-engaged position, and

*a tether* configured for connection to said person, connected to the arm, and operable to transmit an additional force to the arm when the person undergoes a fall from the surface, such that the additional and gravitational-moment forces cooperatively overcome the second force and cause the arm to shift to the engaged position, thereby arresting the fall.

'431 patent, at col. 7, l. 38-col. 8, l. 7 (emphasis added). The primary claim limitation at issue with respect to claim 1 is that the apparatus include a tether.

Claim 5 recites:

5. An apparatus for arresting a fall of a person comprising:

a vehicle having a vehicle structure and tires for placement on a roof surface;

*An arrestor assembly connected to the vehicle structure, shiftable between a raised position and a lowered position,* and further including,

an arrestor arm spaced away from the roof surface in the raised position, the arrestor arm being biased in the raised position by an arm support, and

an engagement plate connected to the arrestor arm, the engagement plate being spaced from the roof surface and adjacent to the vehicle structure when in the raised position and the engagement plate engaging the roof surface in the lowered position;

*an internal cable defining a first end and a second end, the first end being coupled to the*

*arrestor assembly to communicate a force to the arrestor assembly, wherein the force causes the arm to shift to the lowered position*;

a cable passage fixedly connected to the vehicle structure and including an angle mount defining a cross sectional opening leaving a maximum diameter through which the internal cable is entrained; and

a cable connector member connected to the second end of the internal cable and disposed adjacent the mount opposite the arm, presenting a lateral dimension greater than the diameter, so as to limit cable travel in one direction and cooperatively define the non-engaged position, and configured for removable attachment to at least one safety cable opposite the internal cable.

*Id.* at col. 8, ll. 14-44 (emphases added). The primary limitation at issue with respect to claim 5 is the requirement that the arrestor assembly and the arm be shiftable to a lowered position.

### The Accused Products

Plaintiffs Brent E. Smith and AES Raptor, LLC (collectively, "Smith") sued Garlock for infringement of claims 1 and 5 based on Garlock's sales of the Multi-Man and the Twin-Man, two fall-arresting devices. The Twin-Man is more portable and restrains only two workers, while the Multi-Man is capable of restraining more workers. Appellant Br. at 3 n.3. Both the Multi-Man and the Twin-Man use an arm that digs into the ground to halt a worker's fall. Joint Appendix ("J.A.") 1018, 1024.

Smith alleges that the Multi-Man infringes claim 5 of the '431 patent. In the Multi-Man design, an arrestor arm with a gripping piece at the bottom slides linearly along an axis to dig the gripping piece into the ground.

J.A. 103-07. The arm is attached to a pulley that rotates when force from the worker's fall is applied. *Id.* The rotation of the pulley causes the arm to slide down linearly. *Id.* The Multi-Man is pictured below in the raised/resting (left) and engaged (right) positions.



FIG. 2                          FIG. 7

J.A. 1023-24.

Smith also alleges that the Twin-Man infringes claim 1 of the '431 patent. Unlike the Multi-Man, the Twin-Man's arrestor arm rotates down to connect the gripping piece with the ground. The Twin-Man's design is pictured below in the raised/resting (left) and engaged (right) position.



J.A. 1018. The force causing the rotation comes from a tether connected to the falling worker, depicted in line **62** at the right of each figure.

Procedural History

Smith sued Garlock in February 2013 for infringement of the '431 patent. After holding a *Markman* hearing, the district court issued a claim construction order on February 14, 2014. The court held that the terms "shift" and "shift to" mean "pivot" and "pivot to," respectively.

Following the claim construction order, Garlock moved for summary judgment of noninfringement regarding the accused Multi-Man product. Garlock argued that the arrestor arm in the Multi-Man device was capable only of sliding, and thus could not "pivot," as required by the court's claim construction. Appellant Br. at 5.

The district court noted that Smith's expert, James Kernell, Esq., offered testimony of infringement regarding every limitation of claim 5. Finding that Mr. Kernell's testimony demonstrated the existence of a genuine dispute of material fact regarding infringement by the Multi-Man device, the district court denied Garlock's summary judgment motion.

The litigation proceeded to trial. Following trial, the jury found that the Multi-Man infringed claim 5 of the '431 patent and that the Twin-Man infringed claim 1 of the '431 patent. J.A. 1. The jury proceeded to award Smith $322,484.94 in lost profits, in addition to reasonable royalties equal to 4.75% of the total sales for each device. J.A. 6.

Garlock then moved for judgment as a matter of law that the Multi-Man and Twin-Man do not infringe the asserted claims of the '431 patent. Garlock also moved for judgment as a matter of law, or in the alternative for a new trial, on damages. The district court denied Garlock's motions.

Garlock then moved for an additional stay of the judgment, pending appeal, beyond the 14 days prescribed in FRCP 62(a). J.A. 38. Smith did not oppose Garlock's request, but Smith requested that the court enjoin Garlock from continuing to sell the Multi-Man and Twin-Man products. The district court granted both Garlock's motion to stay the judgment and Smith's request for an injunction. J.A. 40.

Garlock now appeals.

### DISCUSSION

Garlock argues that the district court erred in denying its motions for judgment as a matter of law regarding noninfringement and damages. Garlock further contends that the district court erred in entering the injunction order. For the reasons below, we hold that the district court erred in denying Garlock's motion for judgment as a matter of law of nonfringement regarding the asserted claims. As a result, we also vacate the jury award of damages and the district court's injunction order.

### Standard of Review

On issues not unique to patent law, we review district court decisions on motions for judgment as a matter of law under the law of the regional circuit. *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004). The Eighth Circuit reviews *de novo* a district court's decision on a motion for judgment as a matter of law. *Shaw Group, Inc. v. Marcum*, 516 F.3d 1061, 1064 (8th Cir. 2008).

Under Eighth Circuit law, "[j]udgment as a matter of law is only appropriate where the evidence adduced at trial is entirely insufficient to support the verdict." *Shaw Grp., Inc. v. Marcum*, 516 F.3d 1061, 1064–65 (8th Cir. 2008). Thus, we may not set aside the district court's judgment in this case "unless there is a complete absence of probative facts to support the verdict and only specula-

tion supports the verdict." *Id.* While the standard to set aside a jury verdict is unquestionably high, in the present case we find the standard satisfied.

Multi-Man Infringement

Garlock argues on appeal that the district court erred in denying its motion for judgment as a matter of law on the Multi-Man infringement issue. Specifically, Garlock asserts that Smith did not present substantial evidence that the following limitation of claim 5 was met:

> [A]n internal cable defining a first end and a second end, the first end being coupled to the arrestor assembly to communicate a force to the arrestor assembly, wherein the force causes the arm to shift to the lowered position[.]

'431 patent, at col. 8, ll. 28-32. Garlock contends that this claim limitation specifically requires the arm, and not another portion of the arrestor assembly, to pivot because the language reads "the force causes *the arm to shift*".

In response, Smith contends that while "there was conflicting evidence at trial as to how the 'pivot' limitation of claim 5 could be met," such evidentiary disputes are precisely the type of instance in which we must defer to the jury verdict. Smith further argues in the alternative that "claim 5 is satisfied so long as a pivotal movement is *involved in* the operation of the arrestor arm." Appellee Br. at 18-20 (emphasis added).

A patent claim is literally infringed only if the accused device embodies each limitation of the asserted claim. *Research Plastics, Inc. v. Fed. Packaging Corp.*, 421 F.3d 1290, 1297 (Fed. Cir. 2005) (citation omitted). The absence of a single limitation in the asserted claim thus defeats literal infringement. *Id.* Expert testimony that fails to show how the accused device meets a particular limitation cannot constitute substantial evidence support-

ing a finding of literal infringement. *See Johns Hopkins Univ. v. Datascope Corp.*, 543 F.3d 1342 (Fed. Cir. 2008).

In support of its infringement allegations, Smith submitted Mr. Kernell as an expert to explain how the Multi-Man performs each limitation of claim 5 of the '431 patent. On cross examination, Garlock focused on demonstrating that the Multi-Man does not satisfy the claim limitation "wherein the force causes the arm to shift to the lowered position." In particular, Garlock asked Mr. Kernell to explain how the Multi-Man arm "pivots." The following exchange is exemplary of the dialogue between Garlock's counsel and Mr. Kernell on this point:

A:  That pulley rotates and pivots to drive that arm down into the surface, and that is the pivotal movement of that arm.

Q: So it's your opinion that this arm pivots?

A: Yes. The entire assembly, that pivoting of that arm around that pulley that is my opinion.

Q:  I'm not asking about the entire assembly. We're talking about the arm. This item says the arm pivots. This arm does not pivot, does it?

A: No. That's not correct. That is not my opinion. If you look at the claim language, you're taking something out of context. In the claim language it says the arrestor assembly has this pivoting motion with the arm, and it is the pivoting around that pulley that causes the arrestor assembly to shift or pivot between the raised position and the lowered position.

Q: Sir, back to our infringement definition. Each and every element of the patent claim must be included in the product; and as to Claim 5, the Multi-Man does not – Multi-Man's arm does not pivot, and therefore, it does not infringe, correct?

A: No. That's not correct.

J.A. 2104-05. Notably, Mr. Kernell did not answer the question of whether the Multi-Man's arrestor arm itself pivoted. Mr. Kernell instead testified that there was some pivoting motion involved in the arrestor assembly as a whole, and that this motion was sufficient to satisfy the claim limitation requiring that the arm itself pivot. *See id.*

Garlock also presented its own expert, Dr. Elliot Stern, who testified that the Multi-Man does not infringe claim 5 because the arrestor arm does not pivot.

> [I]n questioning whether it literally infringes it must have each and every claim element . . . . for one example . . . . 'The force causes the arm to shift to the lowered position.' The [c]ourt's definition of shift is to pivot. Mechanically one of ordinary [skill] in the art could clearly understand a pivot to be a rotational motion or an angular displacement about a point or a pin, which is often called the pivot; and, as such, the Multi-Man does not pivot. The arm slides in a guide. There is no fixed end and free end of the arm and it has a linear motion. It doesn't rotate about the pin.

J.A. 2370. Dr. Stern emphasized that the arm itself cannot pivot because its movement is restricted to sliding within the guide.

Smith contends that the disputed claim limitation does not require the arrestor arm itself to move, but instead only requires that pivotal movement be involved in the operation of the arrestor arm. Specifically, Smith argues that because the "Multi-Man cart's use of a pulley satisfied Claim 5 of the '431 Patent, there was no need for the arrestor arm to rotate." Appellant Br. at 26. Smith's argument is belied by the actual language of the disputed limitation:

> [A]n internal cable defining a first end and a sec-
> ond end, the first end being coupled to the arres-
> tor assembly to communicate a force to the
> arrestor assembly, *wherein the force causes the
> arm to shift to the lowered position*[.]

'431 patent, at col. 8, ll. 28-32 (emphasis added). The
claim limitation unambiguously requires "the arm," and
not some other component of the assembly, to "shift."
Because the parties do not appeal the correctness of the
district court's construction of "shift" to mean "pivot," we
do not reach this issue.[1]  Thus, applying the district

---

[1]    In a single footnote in its brief, Smith contends
that "[w]hile Plaintiffs disagree with this construction, as
the prevailing parties below, they lack standing to appeal
the district court's claim construction order." Appellee Br.
at 7 n.3 (citing *Novartis Pharmaceuticals Corp. v. Abbott
Labs.*, 375 F.3d 1328, 1339 (Fed. Cir. 2004)).  Smith then
stated in an isolated sentence that "if this Court is in-
clined to reverse the district court's entry of judgment, it
also should reverse the district court's claim construction
order and hold that the phrase 'shift to,' as used in claim
5, must be given its common and ordinary meaning in any
retrial of this matter." *Id.*  Smith's comment is appealing
on its face; the plain meaning of the term "shift" does
seem different from the term "pivot."  We nonetheless do
not have occasion to address whether the district court's
claim construction was proper because Smith has failed to
present any argument on appeal beyond their single
conclusory statement that we "should reverse the district
court's claim construction."  *See SmithKline Beecham
Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir.
2006) (holding that when "a party includes no developed
argumentation on a point . . . we treat the argument as
waived").

court's claim construction, the plain language of the claim requires the arrestor arm itself to rotate. Upon our review of the record, we see no evidence that could support Smith's allegation that the arrestor arm of the Multi-Man meets this claim limitation.

Our prior decision in *Johns Hopkins* controls the present dispute. In *Johns Hopkins*, we considered infringement of a claim to a method for mechanically fragmenting blood clots to prevent occlusion of blood vessels. *Id.* at 1343. The patent described a "fragmentation cage" that first expands to conform to the inner walls of a vein. *Id.*

Smith is also incorrect to assert that *Novartis* barred Smith from advancing its claim construction arguments on appeal. In *Novartis*, we held as follows:

> [A] party who prevails on noninfringement has no right to file a "conditional" cross-appeal to introduce new argument or challenge a claim construction, but may simply assert alternative grounds in the record for affirming the judgment. It is only necessary and appropriate to file a cross-appeal when a party seeks to enlarge its own rights under the judgment or to lessen the rights of its adversary under the judgment.

*Novartis*, 375 F.3d at 1339. Accordingly, we dismissed as improper the prevailing party's cross-appeal concerning the claim construction, precisely because that party prevailed before the district court. Thus, while Smith could not have filed a cross appeal in this case concerning the claim construction, Smith could have asserted "alternative grounds in the record for affirming the judgment." Because Smith did not raise any such alternate grounds on appeal, we cannot address the correctness of the district court's claim construction.

After expanding, the cage rotates to break up the thrombotic material. *Id.* at 1343-44.

The asserted claims required a "fragmentation member" to "expand[] to conform to the shape and diameter of the inner lumen." *Id.* at 1346. The district court instructed the jury that this limitation meant the fragmentation member "remained in contact with the inner lumen in three dimensions along its length and width." *Id.* The accused infringing device was an S-shaped device that, while resting, contacted the walls of the vein in only two places, but could rotate like a corkscrew and thus contact the "inner lumen" in multiple dimensions. Plaintiff's expert opined that the S-wire "expanded and adjusted to remain in contact with the inner lumen in three dimensions along its length and width." *Id.* at 1346. After trial, the jury found that the accused device infringed the claim. *Id.* at 1344. Defendant then moved for judgment as a matter of law of noninfringement, and the district court denied defendant's motion. *Id.*

On appeal, we held that the testimony from Plaintiff's expert was not credible, because the expert failed to address the requirement that the fragmentation member remain in contact with the lumen in three dimensions *before rotation* and because it was impossible for the accused device to meet the "expand to conform" limitation while not rotating. *Id.* Thus, we held that the expert testimony could not constitute substantial evidence that the accused infringing device met this limitation. *Id.* We accordingly reversed the district court's denial of Defendant's motion for judgment as a matter of law of noninfringement. *Id.*

Here, Mr. Kernell's testimony on Multi-Man infringement is similarly not credible. Mr. Kernell testified that the pulley in the arrestor assembly performed the requisite rotating and pivoting motion, and "that is the pivotal movement of that arm." J.A. 2104-05. Such

testimony cannot constitute substantial evidence that the arrestor arm itself pivots. Instead, the only relevant evidence of record appears to indicate that the Multi-Man does not have an arm that is capable of rotational movement. According to Dr. Stern's unrebutted testimony, the Multi-Man arm only "slides" along a linear axis. J.A. 2370.

The present case does not involve a simple "battle of the experts," wherein the fact finder must weigh the merits of the competing expert testimony. Here, the record does not evidence a disagreement between the experts as to whether the arrestor arm is pivoting. In light of the absence in the record of any evidence that could support the jury's verdict of infringement, we must reverse the district court's denial of Garlock's motion for judgment as a matter of law on the issue of whether the Multi-Man infringes claim 5. *See The Shaw Group v. Marcum*, 516 F.3d 1061, 1065 (Fed. Cir. 2008) (holding that judgment as a matter of law is appropriate where there is a "complete absence of probative facts and only speculation supports the verdict").

## Twin-Man Infringement

Garlock next argues that the district court erred in denying its motion for judgment as a matter of law regarding noninfringement of claim 1. Garlock contends that the jury verdict of infringement must be reversed because there is no evidence that the Twin-Man meets the claim limitation requiring a tether. Appellant Br. at 29.

Smith responds that there is substantial evidence demonstrating that Garlock sold, or at least offered for sale, the Twin-Man with a tether.

We agree with Garlock that there is no competent evidence of record regarding whether the tether limitation is met. Therefore, we reverse the judgment of the district

court denying Garlock's motion for judgment as a matter of law of noninfringement concerning claim 1.

First, we consider whether Garlock sold the Twin-Man with a tether; then we consider whether Garlock offered for sale the Twin-Man with a tether. Smith argued that Garlock sold the Twin-Man with a tether because its sister companies and distributors, Garlock East and Garlock Chicago, sold units with a tether.

In its Complaint, Smith alleged that Garlock directly infringes claim 1 of the '431 patent. Direct infringement under 35 U.S.C. § 271(a) requires a patentee to prove that an accused infringer committed "all acts necessary to infringe the patent, either personally or vicariously." *Aristocrat Tech. Aust. PTY Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013) (citation omitted). Acts of a subsidiary company are not imputed to a parent company unless evidence supports "piercing the [corporate] veil." *United States v. Bestfoods*, 524 U.S. 51, 62 (1998).

The parties do not dispute that certain of Garlock's separately incorporated "sister" companies, Garlock Chicago and Garlock East, have sold the Twin-Man with a tether. J.A. 2179, 2243. Garlock states, however, that it does not itself sell the Twin-Man unit with a tether. We note that Smith does not present any affirmative evidence, such as any invoices or receipts, of such sales by Garlock. Moreover, Smith did not produce any evidence to support a theory of piercing the corporate veil. In the absence of such evidence, we cannot hold Garlock liable for the sales of its sister companies. *Bestfoods*, 524 U.S. at 62. Therefore, we hold that the evidence at trial could not support a finding that Garlock itself sold, either directly or vicariously, an infringing device.

We next consider Smith's argument that Garlock offered for sale the Twin-Man with a tether. A party offers to sell an infringing product when it communicates a

"willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon, Inc.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) (citation omitted).

Garlock advertised the Twin-Man, formerly called the



Single Man, in the following image:

J.A. 999. The image states a price ("starting at only $1400"), shows a man connected via a tether to the Twin-Man product, and provides Garlock's contact information for the purchase of the product.

Smith argues that Garlock's advertisement constitutes an offer for sale. Mr. Kernell testified that this advertisement and other marketing materials constituted an offer for sale. J.A. 2084-85. Mr. Kernell also referenced the fact that the Twin-Man could not be used

without the tether and pointed to a section of the instruction manual showing a tether attached to the unit. J.A. 2107-09.

In general, advertisements are not considered offers for sale, but are instead merely solicitations for offers. As specified in the Second Restatement of Contracts:

> Advertisements of goods by display, sign, handbill . . . are not ordinarily intended or understood as offers to sell. The same is true of catalogues, price lists and circulars, even though the terms of some suggested bargains may be stated in some detail.

Restatement (Second) of Contracts § 26, Comment b. Accordingly, we have noted that "contract law traditionally recognizes that mere advertising and promoting of a product may be nothing more than an invitation for offers, while responding to such an invitation may itself be an offer." *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001). Thus, "[g]enerally, it is considered unreasonable for a person to believe that advertisements and solicitations are offers that bind the advertiser." *Mesaros v. United States*, 845 F.2d 1576, 1581 (Fed. Cir. 1988). *Group One* and *Mesaros* therefore indicate that Garlock's general advertisement does not constitute an offer to sell the Twin-Man with a tether.

Smith argues that the present case is akin to *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373 (Fed. Cir. 1988), wherein we held that price quotations could constitute an offer for sale. In *Aarotech*, the accused infringers sent price quotations for an allegedly infringing device directly targeted at potential customers. *Id.* at 1376. Noting that such price quotations "generat[ed] interest in a potential infringing product to the commercial detriment of the rightful patentee," we held that the price quotations constituted an offer for sale. *Id.* at 1379. Here, Smith has produced only evidence that Garlock

issued a general advertisement for its Twin-Man product, which showed use with a tether, with no reference to the Twin-Man and tether being offered for sale collectively. Smith's reliance on *Aarotech* is therefore misplaced. Smith has produced no evidence that Garlock issued price quotations to specific customers for the sale of the Twin-Man with a tether.

We therefore conclude that there was no evidence in the record upon which the jury could have found that the accused Twin-Man device met the limitation of claim 1 requiring use of a tether. Accordingly, we reverse the judgment of the district court denying Garlock's motion for judgment as a matter of law concerning noninfringement of claim 1.

## CONCLUSION

As discussed above, the district court erred in denying Garlock's motion for judgment as a matter of law that the Multi-Man and Twin-Man products do not infringe the asserted claims of the '431 patent. Accordingly, we reverse the judgment of the district court concerning infringement of the asserted claims. Because the accused devices do not infringe, we vacate the jury award of damages and the district court's injunction order.

**REVERSED-IN-PART AND VACATED-IN-PART**

## COSTS

No costs.