# United States Court of Appeals
# for the Federal Circuit

———————————

**LINCOLN NATIONAL LIFE INSURANCE COMPANY,**
*Plaintiff-Appellee,*

**v.**

**TRANSAMERICA LIFE INSURANCE COMPANY, WESTERN RESERVE LIFE ASSURANCE CO. OF OHIO,**
AND **TRANSAMERICA FINANCIAL LIFE INSURANCE COMPANY,**
*Defendants-Appellants.*

———————————

2009-1403, -1491

———————————

Appeals from the United States District Court for the Northern District of Iowa in 06-CV-110, Judge Mark W. Bennett.

———————————

Decided: June 23, 2010

———————————

D. RANDALL BROWN, Barnes & Thornburg LLP, of Fort Wayne, Indiana, argued for plaintiff-appellee. With him on the brief was GARY C. FURST.

STEVEN M. BAUER, Proskauer Rose LLP, of Boston, Massachusetts, argued for defendants-appellants. With

him on the brief were KIMBERLY A. MOTTLEY, SANDRA J. BADIN; and CHARLES S. SIMS, of New York, New York. Of counsel on the brief were JAMES R. MYERS, Ropes & Gray LLP, of Washington, DC, and JOHN KENNETH FELTER, of Boston, Massachusetts.

---

Before, MAYER, CLEVENGER, and MOORE, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* MOORE.
Concurring opinion filed by *Circuit Judge* CLEVENGER.

MOORE, *Circuit Judge*.

Transamerica Life Insurance Company, Western Reserve Life Assurance Company of Ohio, and Transamerica Financial Life Insurance Company (collectively, Transamerica) appeal from a final decision of the district court denying Transamerica's motion for judgment as a matter of law that it does not infringe claims 35-39 and 42 of U.S. Pat. No. 7,089,201 (the '201 patent). Because the evidence of record does not support the jury's verdict of infringement, we reverse and remand.

## I. BACKGROUND

Lincoln National Life Insurance Company (Lincoln) is the assignee of the '201 patent, which is entitled "Method and Apparatus for Providing Retirement Income Benefits." The '201 patent relates to computerized methods for administering variable annuity plans. An annuity is a contract that guarantees the payment of money to an annuitant upon certain intervals. Annuities are typically used to provide individuals with long-term economic protection against the risk of outliving their assets. '201 patent col.1 ll.30-34.

Although a number of different types of annuities exist, the annuities relevant to this case are variable de-

ferred annuities. Administration of a deferred annuity begins with an "accumulation phase," during which the annuity owner deposits money into an account controlled by the insurer. *Id.* col.1 ll.36-42. For variable annuities, the deposits are invested in one or more funds representing a particular asset class, such as U.S. corporate bonds or money market instruments. *Id.* col.2 ll.10-20. The overall account value varies according to the performance of the funds in which the deposits are invested. *Id.* col.2 ll.22-26. The accumulation phase is followed by a "distribution phase," during which the insurer uses the account to periodically make benefit payments to the annuitant. The dollar amount of each benefit payment depends on the current value of the account and, consequently, also varies according to the performance of the underlying funds. *Id.* col.3 ll.18-33. Thus, given sufficiently poor fund performance, the dollar amount of an annuitant's benefit payments could theoretically decrease to zero under a variable annuity option. *Id.* col.3 ll.43-44.

The uncertainty associated with these benefit payments may cause an annuitant to be apprehensive about choosing a variable benefit option, even if a variable option is in his long-term best interest. *Id.* col.3 ll.41-43. The '201 patent discloses that insurers may therefore find it valuable to offer annuitants a minimum benefit feature that guarantees a minimum payment regardless of market activity. *Id.* col.3 ll.41-51. The asserted claims of the '201 patent are directed to computerized methods for administering a variable annuity plan that has such a guaranteed minimum payment feature.

Transamerica sells and administers Guaranteed Minimum Withdrawal Benefit (GMWB) riders[1] that

---

[1]    A rider is an attachment to a base annuity contract.

guarantee its policy owners the right to receive a minimum payment regardless of market performance. On August 8, 2006, Transamerica filed a complaint seeking declaratory judgment that its method of administering GMWB riders does not infringe any claim of the '201 patent. Transamerica also sought declaratory judgment that the '201 patent was invalid under 35 U.S.C. § 102, § 103, and § 112. Transamerica did not allege invalidity under 35 U.S.C. § 101. Lincoln filed a counterclaim for infringement, and the court issued an order realigning Lincoln and Transamerica as plaintiff and defendant, respectively, for trial.

Claim 35, the only independent claim at issue, reads as follows:

> 35. A computerized method for administering a variable annuity plan having a guaranteed minimum payment feature associated with a systematic withdrawal program, and for periodically determining an amount of a scheduled payment to be made to the owner under the plan, comprising the steps of:
>
> a) storing data relating to a variable annuity account, including data relating to at least one of an account value, a withdrawal rate, a scheduled payment, a payout term and a period of benefit payments;
>
> b) determining an initial scheduled payment;
>
> c) periodically determining the account value associated with the plan and making the scheduled payment by withdrawing that amount from the account value;
>
> d) monitoring for an unscheduled withdrawal made under the plan and adjusting the amount of

the scheduled payment in response to said un-
scheduled withdrawal; and

e) periodically paying the scheduled payment to
the owner for the period of benefit payments, *even
if the account value is exhausted before all pay-
ments have been made.*

'201 patent col.25 ll.12-33 (emphasis added). The appli-
cants added the final "even if" clause during prosecution
to overcome a rejection over the prior art.

The district court construed the disputed claim terms
in a March 2008 order. *Transamerica Life Ins. Co. v.
Lincoln Nat'l Life Ins. Co.*, 550 F. Supp. 2d 865 (N.D. Iowa
2008) (*Claim Construction Order*). In construing step (e),
the court relied on Figure 6 of the '201 patent as "most
clearly show[ing] how the payment guarantee [of step (e)]
works, in relation to account value." *Id.* at 965. Figure 6
illustrates the operation of the claimed systematic with-
drawal program:

| Withdrawal Number | Account Value BOY | Withdrawal Amount | Investment Return | Account Value EOY |
|---|---|---|---|---|
| 1 | $100,000.00 | $7,500.00 | 12% | $103,600.00 |
| 2 | $103,600.00 | $7,770.00 | 16% | $111,162.80 |
| 3 | $111,162.80 | $8,337.21 | 12% | $115,164.66 |
| 4 | $115,164.66 | $8,637.35 | -5% | $101,200.95 |
| 5 | $101,200.95 | $8,637.35 | -10% | $83,307.24 |
| 6 | $83,307.24 | $8,637.35 | -21% | $58,989.21 |
| 7 | $58,989.21 | $8,637.35 | 5% | $52,869.45 |
| 8 | $52,869.45 | $8,637.35 | -14% | $38,039.61 |
| 9 | $38,039.61 | $8,637.35 | 1% | $29,696.28 |
| 10 | $29,696.28 | $8,637.35 | -15% | $17,900.09 |
| 11 | $17,900.09 | $8,637.35 | -5% | $8,799.61 |
| 12 | $8,799.61 | $8,637.35 | 15% | $186.60 |
| 13 | $186.60 | $8,637.35 | 23% | $0.00 |
| 14 | $0.00 | $8,637.35 | 10% | $0.00 |
| 15 | $0.00 | $8,637.35 | 8% | $0.00 |

In the example of Figure 6, the guaranteed with-
drawal amount is 7.5% of the highest value attained by

the account. '201 patent col.11 ll.35-36. The account reaches its highest value, $115,164.66, in year 4. Pursuant to the guaranteed payment feature, the account owner is entitled to withdraw $8,637.35 (7.5% of $115,164.66) in years 5 through 15, regardless of the account's actual value. Thus, the scheduled payment of $8,637.35 is still made in years 13 through 15 even though the account value is exhausted, i.e., less than the guaranteed withdrawal amount. *Id.* col.11 ll.29-34.

The court explained that Figure 6 was "consistent with the court's suggested reading of [step (e)] as claiming, first and foremost, a guarantee that the scheduled payment will be made for the period of benefit payments in question." *Claim Construction Order* at 966. The court construed step (e) to mean "[a]t the regular intervals required by the plan, paying the scheduled payment to the owner for the period of benefit payments, even if the account value is less than the scheduled payment amount or zero before the payments guaranteed under the plan have been made." *Id.* at 967. Prior to trial, the court clarified that step (e) does not require actual exhaustion of the account value; as explained in its claim construction order, the "even if" clause simply recites one of the circumstances in which the guaranteed payment must still be made, "not a requirement that the account value be exhausted." *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 597 F. Supp. 2d 897, 912-13 (N.D. Iowa 2009).

On October 30, 2008, Transamerica informed the court of the Federal Circuit's en banc decision in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008), which issued that day. The court asked the parties to file statements addressing the impact of *Bilski* on the case, if any, and both parties filed statements on November 18, 2008. On November 25, 2008, Transamerica filed a motion to

amend its complaint to assert a claim under 35 U.S.C. § 101. The district court denied Transamerica's motion, finding that Transamerica had not diligently pursued its claim under 35 U.S.C. § 101 and thus lacked good cause for untimely asserting the claim.

The parties tried the case to a jury, which found that independent claim 35 and dependent claims 36-39 and 42 of the '201 patent were infringed and not invalid. The jury awarded Lincoln $13 million in damages. Transamerica filed motions for judgment as a matter of law (JMOL), asserting that the evidence was insufficient to support the jury's finding of infringement and that the asserted claims were invalid under 35 U.S.C. § 103 and § 112. The court denied Transamerica's motions and entered a permanent injunction against Transamerica.

Transamerica appeals. On appeal, Transamerica does not challenge the court's claim constructions, jury instructions, or denial of JMOL as to invalidity. Instead, Transamerica asserts that it was entitled to JMOL of noninfringement of the asserted claims. Transamerica also asserts that the court abused its discretion in denying leave to amend its complaint to assert a claim under 35 U.S.C. § 101. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION
### A. Infringement

We review a denial of JMOL according to the law of the regional circuit, here the Eighth Circuit. *See Muni-auction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1323-24 (Fed. Cir. 2008). The Eighth Circuit "reviews de novo the district court's decision to deny judgment as a matter of law." *Shaw Group, Inc. v. Marcum*, 516 F.3d 1061, 1064 (8th Cir. 2008). In making our determination, we consider "all the evidence in the record without weighing

credibility, while resolving conflicts and making all reasonable inferences in favor of the non-moving party." *Id.* at 1064-65. We may not set aside the jury's verdict "unless there is a complete absence of probative facts to support the verdict and only speculation supports the verdict." *Id.* at 1065 (citation omitted).

The jury returned a verdict of infringement in favor of Lincoln, having been instructed that Lincoln could show infringement by proving "that Transamerica must necessarily perform or use each and every step of a claimed computerized method" in administering its variable annuity plans. J.A. 707. The district court then denied Transamerica's motion for JMOL of noninfringement. In denying the motion, the court found that Transamerica "simply reasserts and repackages the same legal theories that the court has already rejected." *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 625 F. Supp. 2d 702, 709 (N.D. Iowa 2009). Specifically, the court took issue with Transamerica's assertion "that [performance of] step (e) of claim 35 requires that the account value be exhausted," noting that it had "repeatedly construed the [step (e)] language at issue to identify only the most extreme circumstance in which the guaranteed minimum payment . . . would still be made." *Id.* The court determined that the evidence permitted reasonable jurors to differ in their conclusions as to whether Transamerica performed all steps of the claimed method, thus rendering JMOL inappropriate. *Id.*

Transamerica argues that the district court erred in denying its motion for JMOL of noninfringement because Lincoln failed to introduce substantial evidence that Transamerica has practiced steps (b), (c), or (e) of claim 35. Transamerica argues that it does not perform step (e), in particular, for two reasons. First, Transamerica asserts that none of its policy owners has ever had an ex-

hausted account and, therefore, that it has never made payments after an "account value is exhausted." Second, Transamerica asserts that it has not yet implemented a computer system that will make a payment in the event an account becomes exhausted.

Lincoln responds that Transamerica's first argument is impermissible in view of the court's claim construction. With respect to Transamerica's second argument, Lincoln asserts that the evidence is sufficient to support the jury's verdict, arguing alternatively that Transamerica uses multiple computer systems to make a payment that reduces an account's value to zero (i.e., that exhausts an account); that the terms of the GMWB riders obligate Transamerica to practice the claimed method; and that the "even if" clause of step (e) is a contingent limitation that need not be performed unless actual exhaustion occurs.

We agree with Lincoln that Transamerica's first argument is directly contrary to the district court's construction of step (e). The court explained that step (e) does not require actual exhaustion; rather, step (e) recites making a guaranteed payment regardless of the account value. Under the court's construction, Lincoln was not required to prove actual exhaustion to establish infringement. Instead, Lincoln was required to prove that Transamerica's computerized method of administering GMWB riders must necessarily make a scheduled payment in the event of an exhausted account. If Transamerica's computerized system makes a payment regardless of account value—i.e., if the system will make a payment to the owner of an exhausted account, should that circumstance arise—Transamerica performs step (e). Conversely, if the computerized system is configured such that it does *not* make a payment if an account is exhausted, Transamerica does not perform step (e). Because actual exhaustion is

not required to infringe claim 35, Transamerica's first argument does not provide any basis for reversing the district court's denial of JMOL.

Transamerica's second argument is that it does not perform step (e) because its computerized system will not make payments if account value is exhausted. Transamerica administers its GMWB riders using a computerized variable annuity administration system called "Vantage." Transamerica has customized Vantage to automate various features of the riders. For example, Vantage tracks annuity account values, calculates an annual withdrawal amount for each policy owner, and makes scheduled payments to policy owners.

The operational details of Vantage are undisputed, and both parties rely on Transamerica's Vantage functional specification as depicting system operation. The functional specification shows that when a policy owner's account value drops to less than the scheduled withdrawal amount—that is, when the account value becomes exhausted—Vantage stops making payments to the policy owner. J.A. 21934. Transamerica's Distribution Services department produces a manual check for the withdrawal amount and sends the check to the policy owner. *Id.* Vantage generates a letter informing the policy owner that his policy was terminated due to lack of account value and that future scheduled payments will be made using a Repetitive Payment System (RPS). *Id.* 21934-35. The underlying account file is then terminated in Vantage and transferred to RPS. *Id.* 21917, 21934.

We agree with Transamerica that the undisputed evidence shows that Vantage stops making scheduled payments when an account becomes exhausted. Indeed, Lincoln does not appear to dispute this point. Lincoln argues instead that Transamerica uses "multiple com-

puter systems" in connection with Vantage to make a final payment reducing the account value to zero. The evidence does not support this argument. Although Lincoln is correct that Vantage interacts with various other programs to administer the GMWB riders—for example, Vantage uses a program called Infopac to generate the policy termination letter—nothing in the record indicates that Transamerica uses a computer system to make a scheduled payment to the owner of an exhausted account. To the contrary, the functional specification expressly states that if there is insufficient policy value to process a withdrawal, "[a] *manual check* will be produced by [Transamerica's] Distribution Services." J.A. 21934 (emphasis added). Lincoln points to no evidence, and we are aware of none, showing that Transamerica uses a computerized method to make the "scheduled payment to the owner . . . if the account value is exhausted before all payments have been made," as recited by claim 35. Given that Transamerica's computerized system is specifically configured such that it does not make a payment if an account is exhausted, we agree with Transamerica that it does not perform step (e).

Lincoln argues alternatively that Transamerica is contractually obligated to practice the claimed method through its sale of the GMWB riders. The court instructed the jury that rider sales are "evidence of infringement to the extent that the sale of the riders or annuities *necessarily requires* or *obligates* Transamerica to practice each and every step of the claimed invention." J.A. 707. Relying on this instruction, Lincoln asserts that the GMWB riders require Transamerica to continue making payments to policy owners even in the event of account exhaustion. Although it is true (and undisputed) that the GMWB riders require Transamerica to make payments after an account is exhausted, the fact that

such payment is required does not mean that it must be made by a computerized method. Claim 35 is not directed to the concept of guaranteed minimum payment variable annuities, but to a computerized method of administering the same.

More fundamentally, even if the GMWB riders did obligate Transamerica to perform the claimed method, this would not be sufficient to establish infringement. "The law of this circuit is axiomatic that a method claim is directly infringed only if each step of the claimed method *is performed.*" *Muniauction*, 532 F.3d at 1328 (emphasis added). A contractual obligation to perform an act is not performance; indeed, a party could avoid infringement simply by breaching its contract. To the extent the court's instruction to the jury implied that Lincoln could establish direct infringement by relying on the terms of the GMWB riders rather than on Transamerica's actual performance of the claimed steps, this instruction was erroneous.

Lincoln also argues that the district court construed the "even if" clause of step (e) to be a contingent limitation that need not be performed unless the condition for performance (the occurrence of an exhausted account) is satisfied. In other words, Lincoln argues that Transamerica's computerized system infringes, even though the computerized system would not make payments to exhausted accounts, because the "even if" clause need not be performed unless account exhaustion occurs. This is simply the converse of Transamerica's contention that actual exhaustion is required to prove infringement, and it fails for the same reasons. As the court explained, step (e) recites making a guaranteed payment regardless of the account value. Under the court's construction, Lincoln was required to prove that Transamerica's computerized system is configured to make payments regardless of

account value, "even if the account value is exhausted before all payments have been made." '201 patent col.25 ll.31-33. Because Transamerica's computerized system does *not* make a payment if an account is exhausted, the system does not make a guaranteed payment regardless of the account value. Therefore, Lincoln failed to prove that Transamerica performs step (e).

The undisputed evidence of record shows that Transamerica's computerized system for administering its GMWB riders does not make a scheduled payment if an account is exhausted. Rather, Transamerica's computerized system stops making payments when an account becomes exhausted and its Distribution Services department provides a manual check to the policy owner. Because the record does not contain any evidence showing that Transamerica performed step (e) of claim 35, the "evidence adduced at trial is entirely insufficient to support the verdict [of infringement]." *Shaw Group*, 516 F.3d at 1064. The court therefore erred in denying Transamerica's motion for JMOL of noninfringement. We need not reach Transamerica's alternative arguments that it does not perform steps (b) or (c) of claim 35.

## B. Denial of Leave to Amend Complaint

Transamerica also argues that the district court abused its discretion in denying Transamerica leave to amend its complaint to assert a claim for invalidity under 35 U.S.C. § 101. In light of our determination that the evidence at trial does not support the jury's verdict of infringement, there is no longer any case or controversy between these parties. Therefore, we need not reach this issue.

The Supreme Court's decision in *Cardinal Chemical Co. v. Morton International, Inc.*, 508 U.S. 83 (1993) is not to the contrary. In *Cardinal*, the Court rejected our

practice of routinely vacating district court judgments of invalidity after determining on appeal that the asserted claims were not infringed. The Court explained that this practice created the "potential for relitigation [of the validity issues] and impose[d] ongoing burdens on competitors who are convinced that a patent has correctly been found invalid." *Id.* at 101. Here, however, the district court never entered judgment on Transamerica's § 101 invalidity claim. Indeed, the court did not even reach the merits of the claim. Although Transamerica would like us to decide this validity issue in the first instance, we decline to do so where it was not considered by the district court.

Because we conclude that Transamerica does not infringe, we need not reach the argument that the district court abused its discretion by refusing to grant Transamerica leave to amend its complaint to assert a claim for invalidity under 35 U.S.C. § 101.

### III.    CONCLUSION

Because we conclude that the evidence of record does not support the jury's verdict of infringement, we reverse the district court's denial of JMOL of noninfringement and vacate the permanent injunction entered against Transamerica. We remand the case to the district court for entry of judgment of noninfringement in favor of Transamerica.

**REVERSED and REMANDED**

# United States Court of Appeals
# for the Federal Circuit

―――――――――

**LINCOLN NATIONAL LIFE INSURANCE COMPANY,**
*Plaintiff-Appellee,*

**v.**

**TRANSAMERICA LIFE INSURANCE COMPANY, WESTERN RESERVE LIFE ASSURANCE CO. OF OHIO,**
AND **TRANSAMERICA FINANCIAL LIFE INSURANCE COMPANY,**
*Defendants-Appellants.*

―――――――――

2009-1403, -1491

―――――――――

Appeals from the United States District Court for the Northern District of Iowa in 06-CV-110, Judge Mark W. Bennett.

―――――――――

CLEVENGER, *Circuit Judge*, concurring.

I join the majority in all respects but one, which is the question of whether the district court erred in denying Transamerica's motion for leave to amend its complaint to add an invalidity claim under 35 U.S.C. § 101 for claiming ineligible subject matter. Because the motion was offered well after the cut-off date for amended pleadings, and the circumstances of the case showed beyond any doubt that

the claim could have been raised before the deadline for amendments, Lincoln opposed the motion.

On appeal, Transamerica complains about the denial of its untimely attempt to amend its complaint. The district court's opinion denying the section 101 amendment describes in detail the reasons why Transamerica easily could have raised this defense in a timely fashion. Rather than decide whether the district court erred in denying Transamerica's motion for leave to amend the complaint, the majority ducks the issue by saying we are not required to decide the question of invalidity. Whether or not we are compelled to adjudicate invalidity, I think we should review the denial of the motion to amend, and to that limited extent, I disagree with the majority.

We review an order granting or denying leave to amend under the pertinent regional circuit law. *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1124 (Fed. Cir. 2004). In the Eighth Circuit, denying the amendment of a complaint is reviewed for abuse of discretion. *See Alternate Fuels, Inc. v. Cabanas*, 538 F.3d 969, 974 (8th Cir. 2008).

By no stretch of anyone's imagination could it be said that the district court abused its discretion by denying Transamerica's motion for leave to add a section 101 claim. Transamerica clearly knew of the import of the issue to its case well before the deadline for amendments passed, yet waited to file its motion too late in the game.