NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SERVER TECHNOLOGY, INC.,**
*Plaintiff-Appellee*

**v.**

**AMERICAN POWER CONVERSION CORPORATION,**
*Defendant-Appellant*

---

2015-1605

---

Appeals from the United States District Court for the District of Nevada in No. 3:06-cv-00698-LRH-VPC, Judge Larry R. Hicks.

---

Decided: September 23, 2016

---

JAMES E. HARTLEY, Holland & Hart LLP, Denver, CO, argued for plaintiff-appellee. Also represented by MICHAEL P. MANNING, Billings, MT; DONALD A. DEGNAN, Boulder, CO.

PAUL MARCH SMITH, Jenner & Block LLP, Washington, DC, argued for defendant-appellant. Also represented by ADAM G. UNIKOWSKY; REGINALD J. HILL, MICHAEL

GLENN BABBITT, PETER H. HANNA, TERRENCE J. TRUAX, Chicago, IL.

––––––––––––––––

Before DYK, PLAGER, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

The trial court adopted a jury's advisory verdict that Server Technology Inc.'s ("STI") patents were not invalid as obvious and upheld the jury's verdict that those patents were infringed by American Power Conversion Corporation ("APC"). APC appeals the district court's denial of its motions for judgment as a matter of law ("JMOL") on those issues. We reverse the trial court's decisions because they were based on an erroneous claim construction.

## BACKGROUND

### A. Patented Technology

APC and STI are competitors in the market for intelligent power distribution units ("PDUs")—informally known as plugstrips:



U.S. Patent No. 7,702,771 at Fig. 1.

PDUs are used to regulate power flowing to computer servers in data centers. In data centers, computer servers are stacked in racks. Data centers may contain thousands of racks, and each rack has a PDU to power the servers it holds. Data centers benefit from maximizing the number of servers in each rack. However, if the servers in a rack draw too much power, the PDU will overload and fail.

The patents at issue relate to PDUs that digitally display the amount of power being drawn. Only two claims are at issue: claim 15 of U.S. Patent No. 7,043,543 (the "'543 patent") and claim 15 of U.S. Patent No. 7,702,771 (the "'771 patent"). There are only two pertinent differences between claim 15 of the '543 patent and claim 15 of the '711 patent. *Compare* '543 patent col. 12 ll. 21−50 *with* '771 patent col. 12 ll. 19−46. First, claim 15 of the '543 patent describes an "electrical power distribution *plugstrip*," while claim 15 of the '771 patent describes an "electrical power distribution *device*." Second, Element A of claim 15 of the '543 patent includes the limitation of a "*vertical strip* enclosure," while Element A of claim 15 of the '771 patent includes the broader limitation of "*an* enclosure." Claim 15 of the '543 patent reads as follows:

15. An electrical power distribution plugstrip connectable to one or more electrical loads in a vertical electrical equipment rack, the electrical power distribution plugstrip comprising in combination:

A. a vertical strip enclosure having a thickness, and a length longer than a width of the enclosure;

B. a power input penetrating said vertical strip enclosure;

C.   a plurality of power outputs disposed along an area on a face of said length of the strip enclosure, each among the plurality of power outputs being connectable to a corresponding one of said one or more electrical loads;

D.   a plurality of power control relays disposed in said vertical strip enclosure, each among said plurality of power control relays being connected to said power input and to one or more corresponding power outputs among said plurality of power outputs;

E.   a digital current information display disposed on another area of said vertical strip enclosure and adjacent to said plurality of outputs in current-determining communication with at least one among said power input and said plurality of power outputs; and

F.   a plugstrip current reporting system (i) associated with the vertical strip enclosure (ii) in power information determining communication with at least one among said power input and said plurality of power outputs, and (iii) communicatingly connectable with a distal current reporting system through a communications network external to the electrical power distribution plugstrip.

'543 patent col. 12 ll. 21−50.

Conventional PDUs used light-emitting diodes ("LEDs") to alert users to the risk of overload, but they did not tell users how much more power a rack could handle. STI's patented PDU uses a digital display to provide a numerical value for the amount of power flowing through the PDU. STI's claimed invention allows users to maximize the number of servers in each rack without risking overload by displaying the amount of power flowing through a PDU.

### B.   Procedural History

STI sued APC, claiming that two APC PDUs infringe claims 15 of the '543 and '771 patents.  APC denied the infringement allegations and filed a motion for summary judgment on grounds that the asserted claims are invalid as obvious.  APC argued that a person of ordinary skill in the art would have combined a prior art PDU with identified prior art digital displays that numerically reveal how much power is flowing through a plugstrip.

The district court construed the word "plugstrip" in claim 15 of the '543 patent to include a one-piece limitation; the claimed invention was limited to a single, fully-integrated device.  The trial court denied APC's motion for summary judgment with respect to obviousness.  The trial court held that the prior art did not disclose a single, integrated device; in particular, that the LED display associated with the prior art PDU was attached externally to the plugstrip, not integrated into it.  The trial court reasoned that the evidence, viewed most favorably to STI, revealed no motivation to combine and that STI's evidence of secondary considerations supported a finding of non-obviousness.

A trial was held on the parties' infringement and invalidity claims.  Although the trial court's summary judgment decision finding a one-piece limitation only applied to the '543 patent, the record reveals that the limitation was applied to both patents at trial.  The parties presented expert and demonstrative evidence showing that the one-piece limitation applied to both patents, and during trial the judge stated that both patents had a one-piece limitation.  *See* J.A 25023 at Tr. 95:9−13, 25142 at Tr. 569:10−14, 25147 at Tr. 589:18−24.

The jury returned a verdict finding that APC infringed the '543 patent and the '771 patent.  The jury also issued an advisory verdict pursuant to Fed. R. Civ. P. 39(c) finding that APC failed to prove by clear and con-

vincing evidence that either of the claims at issue would have been obvious to a person of ordinary skill in the art at the time of the invention. The advisory verdict included explicit findings by the jury concerning secondary indicia of nonobviousness. Consistent with the jury's findings in its advisory verdict, the trial court held that claims 15 of '543 and '771 patents were not invalid as obvious.

The district court denied APC's motion for JMOL and alternative motion for a new trial. APC appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(C).

STANDARD OF REVIEW

We review a district court's order granting or denying JMOL under the standard applied by the regional circuit, which in this case is the Ninth Circuit. *Lincoln Nat'l Life Ins. Co. v. Transamerica Life Ins. Co.*, 609 F.3d 1364, 1367 (Fed. Cir. 2010). In the Ninth Circuit, JMOL review is *de novo*, and the appellate court views evidence in the light most favorable to a jury verdict. *Amarel v. Connell*, 102 F.3d 1494, 1521 (9th Cir. 1996). When a district court's claim construction relies only on intrinsic evidence, as it did here, we review that claim construction *de novo*. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

DISCUSSION

APC argues that the district court erred in construing claim 15 of the '543 patent to contain a one-piece limitation. We agree.

Claim terms are given their ordinary and customary meaning, which is the meaning they would have to a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). That meaning may be determined from the claims themselves, the specification, the

prosecution history, dictionaries, and any other relevant evidence. *Id.* at 1312–18.

Element A of claim 15 of the '543 patent indicates that the claimed plugstrip comprises a vertical strip enclosure, and some of the elements must clearly be physically connected to that enclosure. For example, the power outputs in Element C must be "disposed along" a length of the enclosure, the power control relays in Element D must be "disposed in" the enclosure, and the digital current information display in Element E must be "disposed on" the enclosure. '543 patent col. 12 ll. 21–50. By contrast, Element F, the current reporting system, must only be "associated with" the enclosure. *Id.* This does not require that the current reporting system be lodged on or within the one-piece enclosure, because "associated with" merely requires commonality, not physical connection. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1306 (Fed. Cir. 2014).

The district court incorrectly interpreted the term "comprising" in claim 15 of the '543 patent to require that all six elements must be contained inside a single enclosure. We have recognized that "comprising" is a term of art that means "including but not limited to." *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360 (Fed. Cir. 2007). The use of the word "comprising" only means that the plugstrip must have at least all six of the claimed elements, but not that all six elements must be contained in a single enclosure. Moreover, dependent claim 17 discloses a two-piece embodiment of the plugstrip in claim 15, which further militates against construing the plugstrip in claim 15 to have an inherent one-piece limitation. *See* '543 patent col. 12 ll. 47–61. Finally, the fact that the specification discloses a one-piece embodiment does not limit the plain language of claims that are broader than that disclosed embodiment. *Electro Med. Sys., S.A. v. Cooper Life Sci., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

Given evidence in the record revealing that the one-piece limitation was effectively applied to both patents at trial, the jury's advisory findings were based on an erroneous construction. The one-piece limitation was material to the scope of applicable prior art, motivation to combine, and the nexus between secondary indicia of obviousness and the claimed inventions.

We therefore decline to uphold the jury verdict of infringement given the flawed claim construction.

CONCLUSION

We *reverse* the trial court's claim construction and *remand* for further proceedings consistent with this opinion its rulings on validity and infringement.

**REVERSED AND REMANDED**

COSTS

No costs.